UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SHERTICE DANIELS                                                                                    PLAINTIFF

VERSUS                                                            CIVIL ACTION NO. 2:23-CV-40-KS-RPM

COMMISSIONER OF SOCIAL SECURITY                                                      DEFENDANT

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Shertice Daniels' Complaint appealing from the Commissioner of Social Security's decision which denied her claim for supplemental security income under the Social Security Act.[1]  Doc. [1].  Daniels initially alleged a period of disability beginning December 15, 1997; however, she later amended the alleged onset date to January 8, 2021.  Doc. [8] at 101–02.  Daniels was 44 years old at the alleged onset of disability.  *Id.* at 178, 187.  She has a high school education but no past relevant work experience.  *Id.* at 287.  She alleged the following impairments: blind in left eye, schizophrenia, bipolar, overweight, anxiety, and depression.  *Id.* at 286.

Daniels' claim was denied initially and on reconsideration.  *Id.* at 203, 211.  She requested and was granted a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 213.  On August 12, 2022, the ALJ issued a decision denying supplemental security income.  *Id.* at 42–54.  In her decision, the ALJ found that Daniels had not engaged in substantial gainful activity since the alleged onset date of January 8, 2021.  *Id.* at 44.  The ALJ found that Daniels had severe

---

[1] Daniels' first name is spelled "Shertice" in the Complaint, and the case was styled using that spelling.  However, Daniels' first name is consistently spelled "Shertrice" in the administrative record.  Additionally, the parties use "Shertrice" in their briefs.

impairments of schizoaffective disorder, bipolar disorder, and obesity. *Id.* The ALJ also considered whether Daniels had severe impairments from hypertension, diabetes mellitus, and vision loss; but found that none of those conditions rose to the level of severe impairment. *Id.* at 45. The ALJ concluded that Daniels' impairment or combination of impairments did not meet any of the Listings found in the Social Security regulations. *Id.* at 46.

Based on her impairments, the ALJ determined that Daniels maintained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967. *Id.* at 48. But the ALJ found Daniels would have the following limitations:

> [T]he claimant would be limited to frequent kneeling or crawling, and occasional climb[ing] ramps or stairs, but never ropes, ladders, or scaffolds. She can perform unlimited stooping, crouching, or balancing. She should avoid all exposure to unprotected heights. Mentally, she is limited to performing simple, routine, repetitive tasks with few, if any workplace changes. In addition, she is limited to jobs with no interaction with the general public.

*Id.* Of particular significance to the issues raised in the instant Complaint, the ALJ declined to include a requirement that Daniels needs moderate levels of supervision to maintain work performance. *Id.* at 52. The ALJ made this finding despite medical opinion evidence indicating Daniels would need supervision based on her impairments. *Id.* at 184, 194. Relying on the testimony of the vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Daniels can perform; therefore, she is not disabled as defined by the Social Security Act. *Id.* at 53–54. The Appeals Council denied Daniels' request for review. *Id.* at 5. Daniels then filed the instant Complaint in federal court.

Daniels argues that (1) the ALJ erred by creating an RFC not supported by substantial evidence; (2) the ALJ erred by failing to consider if Daniels could sustain employment for a significant period of time; and (3) the Appeals Council erred by failing to properly consider medical evidence submitted after the hearing date. Doc. [13] at 3.

2

## Law and Analysis

### Standard of Review

The court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration ("SSA")

utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).  Under this analysis, the ALJ may decide a claimant is disabled if he or she finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he or she is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he or she cannot perform this alternative employment.  *Id.*

**<u>Residual Functional Capacity</u>**

In her first assignment of error, Daniels argues the ALJ erred by creating an RFC not supported by substantial evidence.  Doc. [13] at 3.  She specifically contends the RFC is not supported by substantial evidence due to the "conspicuous absence of credible choices."  *Id.* at 4–6. She criticizes the ALJ's RFC assessment with respect to her mental or psychological limitations, claiming "[t]here is absolutely no support by an examining or non-examining physician for an RFC of this nature."  *Id.* at 4.  Daniels points specifically to the ALJ's decision not to include a requirement of moderate levels of supervision.  *Id.* at 6.  The Commissioner does not dispute Daniels "has severe impairments that result in significant functional limitations."  Doc. [14] at 6.  But the Commissioner maintains substantial evidence supports the ALJ's RFC assessment.  *Id.*

4

The ALJ determined that Daniels maintained the RFC to perform light work but with certain physical and mental limitations. Doc. [8] at 48. Here, Daniels criticizes the ALJ's RFC assessment only as to the mental or psychological limitations; therefore, the physical limitations included in the RFC are not at issue.[2] The ALJ considered the opinions of the following medical providers: Dr. Emma Peden, Psy.D.; Mr. Billy Sanson, LPC; and Mr. Donald Dearman, PMHNP-BC. *Id.* at 49–51. According to Dr. Peden, Daniels appeared to have a debilitating lifelong mental health condition impairing certain mental and social abilities. Doc. [9] at 230. Mr. Sanson found Daniels had mental limitations and very limited social engagement. *Id.* at 266–67. Mr. Dearman explained that Daniels still experienced symptoms such as insomnia, mood swings, mania, and anxiety, despite the efforts made to stabilize Daniels' mental illness with treatment. *Id.* at 133, 290. Ultimately, the ALJ found all three medical providers' opinions unpersuasive because they were either unsupported or inconsistent with the overall medical record. Doc. [8] at 50–51.

The ALJ heavily relied on non-medical evidence, i.e., Daniels' testimony that she cared for her three young grandchildren Monday through Friday every week.[3] *Id.* For the most part, however, the ALJ also cites to medical evidence explaining why the opinions were either unsupported or inconsistent. For example, Dr. Peden's records comport with Daniels' testimony, as Daniels reported to Dr. Peden in March 2021 that "she is self-sufficient in her activities of daily living with assistance," such as preparing food (with the assistance of her 19-year-old child), managing hygiene and self-care, washing clothes, and handling her financial affairs. Doc. [9] at 229. The ALJ also cited medical evidence from other providers to show that Daniels reported throughout 2021 that she was doing well and denied certain symptoms such as mood swings, anger,

---

[2] The ALJ considered and relied on the opinions of state agency physicians, who assigned physical limitations to Daniels that closely track the ALJ's RFC assessment. Doc. [8] at 52.
[3] The ALJ also mentioned Daniels' ability to prepare meals for herself and her grandchildren daily, plan and cook large family meals occasionally, and manage and maintain her medication without assistance. Doc. [8] at 50.

irritability, and anxiety. *Id.* at 275, 278, 281. The ALJ further explained that Mr. Sanson's own treatment records gave Daniels positive remarks such as normal affect, mood, and speech patterns; rational thought processes; appropriate social interaction; socially appropriate dress, grooming, and eye contact; compliance with treatment regimen; and good response to medication. Doc. [8] at 51. There are numerous treatment records from Mr. Sanson from 2018 to 2021 that consistently give these remarks. Doc. [9] at 175–76, 178, 180, 182, 184, 186, 194, 200, 203, 206–10, 213, 220–27. Lastly, the ALJ found Mr. Dearman's opinion inconsistent because his own treatment notes reflected "consistently unremarkable mental status examination," which agreed with other medical records cited by the ALJ.[4] Doc. [8] at 51.

After discounting the above opinions, the ALJ considered and partially relied on the opinions of state agency psychological consultants, who both concluded that Daniels' mental impairments cause moderate limitations. Doc. [8] at 52. Both Dr. Jesse Dees and Dr. Amy Baskin found Daniels had moderate mental limitations and would need moderate levels of supervision to maintain work performance. *Id.* at 180–81, 183–84, 190, 193–94. But the ALJ found the need for moderate levels of supervision to maintain work performance was not supported by the whole of

---

[4] The ALJ also found that Mr. Dearman's opinion infringed on an issue reserved for the ALJ. Doc. [8] at 51. Mr. Dearman opined that Daniels' symptoms would prevent her from maintaining steady employment. Doc. [9] at 290. "Medical opinions on issues reserved to the Commissioner are not entitled to 'any special significance.'" *Mize v. Kijakazi*, No. 1:21-CV-128-JMV, 2022 WL 1695795, at *4 (N.D. Miss. May 26, 2022); *see* 20 C.F.R. § 416.927(d)(3) (The ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."). "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Pursuant to 20 C.F.R. § 416.927(d)(1), "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled." *See Cornick v. Berryhill*, No. 4:17-CV-1265-SPM, 2018 WL 4383300, at *6 (E.D. Mo. Sept. 14, 2018) (finding that the ALJ properly noted the treating physician's opinion which found the claimant unable to maintain steady employment was not a medical opinion entitled to credit under the regulations because it was an opinion on a question reserved to the Commissioner); *Perkins v. Colvin*, No. 6:13-CV-985-PK, 2014 WL 5461857, at *18 (D. Or. Oct. 26, 2014) (finding a medical opinion about the claimant's ability to maintain steady employment was an opinion on the ultimate issue of whether the claimant was disabled).

the record. *Id.* at 52. The ALJ reiterated that Daniels ability to provide ongoing care for her three grandchildren was contraindicative of a need for supervision. *Id.*

Here, Daniels argues the ALJ "cherry-picks" the evidence in order to find that Daniels did not need moderate levels of supervision to maintain work performance. Doc. [13] at 6. The Court agrees. An ALJ may not "cherry-pick evidence to support a preferred conclusion." *Cooper v. Kijakazi*, 3:20-CV-HTW-LGI, 2023 WL 2298742, at *4 (S.D. Miss. Jan. 6, 2023). "When an ALJ improperly cherry-picks evidence, he [or she] commits reversible error." *Martinez v. Kijakazi*, No. EP-22-CV-135-KC-ATB, 2023 2885402, at *10 (W.D. Tex. Apr. 5, 2023) (citing *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014)). "[A]bsent an explanation, '[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding on nondisability.'" *Trujillo v. Comm'n, SSA*, 818 F. App'x 835, 842 (10th Cir. 2020); *see Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2008) (remanding to allow the ALJ to explain why he adopted some restrictions in a medical opinion while rejecting others). Likewise, an ALJ "must be careful not to succumb to the temptation to play doctor." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

The ALJ explained why she found the opinions only partially persuasive but justified her assessment that moderate levels of supervision were not necessary to maintain work performance only with the fact that Daniels could provide ongoing care for her three young grandchildren. The reliance on a claimant's ability to perform activities such as caring for children is not unique. *See Ramirez v. Covlin*, 606 F. App'x 775, 779 (5th Cir. 2015) (noting the claimant cared for her children, cooked simple meals, drove, and shopped); *Dashti v. Astrue*, 508 F. App'x 347, 350 (5th Cir. 2013) (stating the claimant cared for her three young children, washed dishes, did laundry,

7

and cooked for her family). And as previously stated, "it is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence." *Ramirez*, 606 F. App'x at 779. However, the Court may "scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

Sometimes non-medical evidence may be sufficient to support an RFC. *See Whalen v. Kijakazi*, No. 3:21-CV-24-DAS, 2022 WL 3333487, at *4 (N.D. Miss. Aug. 11, 2022). This is not such a case. Foremost, this case does not lack medical opinions as to this specific issue. Due to Daniels' moderate mental limitations, both Dr. Dees and Dr. Baskin stated that moderate levels of supervision would be necessary to maintain work performance. Doc. [8] at 180–81, 183–84, 190, 193–94. These statements clearly fall within the regulatory definition of a medical opinion. *See Vogelsang v. Comm'n of Soc. Sec.*, 657 F. Supp. 3d 450, 468 (S.D.N.Y. 2023); *Taulbee v. Berryhill*, No. CIV-18-52-G, 2019 WL 1421758, at *3 (W.D. Okla. Mar. 29, 2019); *Huntington v. Colvin*, No. 1:13-CV-759, 2014 WL 346288, at *9–10 (N.D. Ohio Jan. 30, 2014); *see also* 20 C.F.R. § 416.913(a)(2) (defining "medical opinion"); 20 C.F.R. § 416.927(a)(1) (defining "medical opinion"). The ALJ rejected these medical opinions but cites to no other medical opinions contradicting the necessity of supervision. *See, e.g., Moore v. Comm'r of Soc. Sec.*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the ALJ did not err in failing to incorporate the psychologist's limitation of "moderate levels of supervision" to maintain work performance, where the ALJ relied on the consulting examiner's opinion which did not include a suggestion that supervision was necessary). In doing so, the ALJ made her own independent medical assessment about whether Daniels needed supervision to maintain work performance. *Frank*, 326 F.3d at 622.

Second, this case involves significant impairments because the ALJ found that Daniels had severe impairments of schizoaffective disorder, bipolar disorder, and obesity. Doc. [8] at 44. Third, the non-medical evidence is not compelling enough standing alone to justify the ALJ's reasoning. "The ability to care for children, alone, does not inherently indicate that a claimant possesses the ability to perform on a regular and continuing basis in a work-setting." *Gonzales v. Colvin*, 191 F. Supp. 401, 424 (M.D. Pa. 2015); *see Alexandria S. v. Comm'n of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2583212, at *1 (N.D.N.Y. Mar. 21, 2023). As such, the undersigned finds the ALJ's reasoning for partially rejecting the state agency psychological consultants' opinions to be insufficient. The ALJ partially rejected Dr. Dees' and Dr. Baskin's opinions based on non-medical evidence, i.e., Daniels' testimony about caring for her grandchildren, and nothing more. Doc. [8] at 52. The ALJ provides no further explanation and cites to no medical evidence supporting her assessment. Although common sense might dictate that a person who can care for young children can hold down a job without moderate levels of supervision, "common sense about medical matters is often wrong." *Frank*, 326 F.3d at 622.

Moreover, Daniels' testimony is ambiguous with respect to her ability to care for her grandchildren independently. Daniels testified she needed help caring for her grandchildren, keeping her home clean, and paying her bills. Doc. [8] at 109, 113, 118–19. She received assistance from others such as her family and church members. *Id.* While she lived at home by herself, she explained that family members came by to check on her on a daily basis. *Id.* at 117–20. The ALJ did not discuss these portions of Daniels' testimony in her decision as to this issue. Daniels' testimony as a whole actually indicates a need for some assistance and supervision.[5]

---

[5] And there is other medical evidence, such as Dr. Peden's opinion, which states that Daniels was "self-sufficient" but still needed some level of assistance with her daily activities. Doc. [9] at 229.

9

"If the ALJ's decision cannot be affirmed based upon the reasoning provided by the ALJ, then it must be reversed." *Smith v. Colvin*, No. 1:14-CV-195-SA-DAS, 2016 WL 762693, at *9 (N.D. Miss. Feb. 25, 2016). Based on the aforementioned, the Court determines the ALJ erred in her RFC assessment specifically with respect to whether Daniels needed moderate levels of supervision to maintain work performance. Therefore, remand is required.[6]

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which

---

[6] Since remand is appropriate, the Court need not reach Daniels' other arguments. *See, e.g., Morgan v. Colvin*, 803 F.3d 773, 775 (5th Cir. 2015).

there is no written objection. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 2nd day of February 2024.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE